UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBIN PHILPOTT,

              Plaintiff,

v.                                           Case No.  4:05-CV-70

CITY OF PORTAGE, et al.,                HON. GORDON J. QUIST

              Defendants.
_____/

**OPINION**

      Plaintiff, Robin Philpott ("Robin" or "Philpott"), has sued City of Portage Police Officers Matthew Wolfe ("Wolfe"), Sharon Brignall, Kevin Gleesing ("Gleesing"), and Brian VandenBrink, Michigan State Police Trooper Kelley Whiting ("Whiting"), and the City of Portage, alleging a claim under 42 U.S.C. § 1983 for violation of her rights under the Fourth and Fourteenth Amendments for use of excessive force.  Philpott also alleges state law claims of assault and battery and gross negligence. Philpott's claims are based upon her allegation that, in connection with executing search and arrest warrants, Defendants placed her in handcuffs and failed or refused to loosen them after Philpott repeatedly complained that they were too tight.  Now before the Court is Defendant Whiting's motion for summary judgment.  For the reasons stated below, the Court will deny the motion in its entirety.

## I.  **Background**[1]

      In January 2005, Robin, who was then known as Robin Sabo, was living at 3401 Fawnlove, Apartment No. 6, Portage, Michigan, with her daughter and Mark Philpott ("Mark") (whom she

---

[1]Unless otherwise noted, the facts set forth herein are based upon the allegations set forth in the complaint, as verified by Philpott in her affidavit filed in response to Whiting's motion.

subsequently married).  On January 21, 2005, at approximately 10:30 p.m., Defendants arrived at the  apartment to execute an arrest warrant for Mark and to search for stolen pornographic DVDs pursuant to a search warrant.  Defendants went to the door, knocked, announced themselves as Portage police officers, and instructed the occupants to open the door.  At that time, Robin, dressed only in a shirt, was walking by her front door on the way to the bathroom to get her pajama bottoms when she heard the knock on the door.  Robin responded, "just a minute," and advised Defendants that she had to put on her pajama bottoms.  As Robin was attempting to put on her pajama bottoms, Defendants broke the door with a battering ram and entered the apartment.[2]  Startled by the breaking door, Robin urinated on herself.  Defendants pushed  Robin to the ground and handcuffed her.  In the process, Robin's pajama bottoms fell to her ankles.

Defendants left Robin on the ground, handcuffed, with her hands behind her back.  The handcuffs were too tight, and Robin's wrists, hands, and fingers immediately began to hurt and then go numb.  During the next hour or so, Robin complained repeatedly and loudly to Defendants that the handcuffs were too tight and that her left hand and fingers were going numb.  She asked Defendants to loosen the handcuffs, but Defendants did not check or loosen the handcuffs.  At approximately 11:10 p.m., when Defendants took Mark out of the apartment, Defendants placed Robin in a chair, but they did not check on, loosen, or release her from, the handcuffs, even though Robin continued to complain that they were too tight.

At approximately 11:30 p.m., Defendants released Robin's handcuffs and then re-handcuffed her with her in front of her.  She still complained, however, that the handcuffs were too tight. Finally, at approximately 12:15 a.m., Defendants released Robin from the handcuffs and left the

---

[2]Whiting testified in his deposition that in a pre-execution meeting, Officer Wolfe told him that Robin and Mark would likely not be compliant because in a previous attempt to arrest Mark, Robin stalled the officers at the door long enough to allow Mark to escape out of a window.

apartment. Thereafter, Robin sought medical attention for her left and right wrists, hands, and fingers. Her medical providers diagnosed her with neuropathy in her left wrist and neuropathy in her right wrist, hand, and fingers, and performed surgeries to alleviate the problems and symptoms. However, the surgeries provided limited or no relief and she continues to have problems with both wrists.

Whiting testified in his deposition that he saw one of the other officers begin to handcuff Robin while she was on the ground, and he assumes by process of elimination that it was Officer Gleesing.[3] He did not see Robin fully cuffed. Whiting said that he saw Robin on her stomach briefly and then headed into the adjoining bedroom with Officer Wolfe to secure Mark. Officer Wolfe placed Mark in handcuffs and took him into the living room. Whiting went into the hallway for about fifteen seconds, and Officer Wolfe asked him to go help Officer VandenBrink search the apartment. Whiting said that while he was in the hallway he did not see Robin and that, although he heard several people talking, he does not recall what was being said. He said that he does not recall hearing Robin say anything about the handcuffs being too tight or anything else. Whiting then returned to the bedroom he had been in and began to help Officer VandenBrink search.

After searching for several minutes, Whiting found several DVDs, and he asked someone to bring a copy of the search warrant into the bedroom so that he could determine whether any of them was listed in the warrant. Another officer came into the bedroom and, after checking the DVDs against the warrant, seized some of them. In addition to the DVDs, Whiting found various pill bottles, drug paraphernalia, and some suspected methamphetamine. Whiting estimates that he spent approximately thirty-five to forty-five minutes searching. Whiting testified that while he was

---

[3]In support of his motion, Whiting has filed portions of the transcript of his deposition. Although the Court has reviewed the transcript and relies upon it in this Opinion, it will not cite the transcript because the copy that Whiting has filed lacks page numbers.

searching in the bedroom he heard people talking in other rooms, but he does not recall any specifics of what was being said.  After he was finished searching in the bedroom, Whiting  went into the living room and asked the officers present there whether they needed him to do anything else.  After they told him "no," he left.  Whiting said that he saw Robin when he was in the living room, but he did not recall having any interaction with her, nor did he recall whether she was wearing handcuffs at that time.

In opposition to Whiting's motion, Robin has submitted an affidavit from Mark Philpott. Mark states in his affidavit:

> While I was in the bedroom with law enforcement officers, which was for approximately 20 minutes, I could hear Robin asking law enforcement officers loudly to loosen the handcuffs that were on her because they were too tight.  Robin was in the hallway at that time.  I spent another 10-15 minutes in the dining room with officers before being led out of the apartment.  During this time I also heard Robin complain about tight handcuffs and that she wanted them loosened.

(Mark Philpott Aff. ¶ 4.)

## II.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992)(quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

4

### III.  Discussion

As indicated above, Philpott alleges that Defendants violated her Fourth Amendment rights by using excessive force in connection with their use of handcuffs on her.  Philpott does not allege that the use of handcuffs alone constituted the violation; rather she alleges that the handcuffs were too tight and that Defendants ignored her repeated complaints to loosen the handcuffs.  Philpott further alleges that the use of handcuffs that were too tight constituted an assault and battery under state law and the failure to intervene to loosen or remove the handcuffs constituted gross negligence under M.C.L. § 691.1407.

Whiting argues that he is entitled to summary judgment on Philpott's Fourth Amendment claim because his own deposition testimony establishes that he never touched Philpott and that he was never aware that Philpott was complaining that the handcuffs were too tight.  He further claims that he is entitled to qualified immunity because a reasonable police officer in his position could have believed that his conduct was lawful.  With regard to Philpott's state law claims, Whiting asserts that the assault and battery claim fails because there is no evidence that he ever touched or even talked to Philpott, and he argues that the gross negligence claim fails because Michigan law does not allow a plaintiff to transform an intentional tort into a claim of negligence and, even if such a claim were cognizable under the facts presented, his conduct was not the proximate cause of Philpott's injuries.

A.      **Fourth Amendment Claim**[4]

Whiting argues that he is entitled to qualified immunity on Philpott's excessive force claim. Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Poe v. Haydon, 853 F.2d 418, 423 (6th Cir. 1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735 (1982)). A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [] officer[] possessed." Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040 (1987). A plaintiff who seeks to hold an official protected by qualified immunity liable must: (1) identify "a clearly established right alleged to have been violated"; and (2) establish that "a reasonable police officer in [the] defendant[']s position should have known that the conduct at issue was undertaken in violation of that right." Johnson v. Estate of Laccheo, 935 F.2d 109, 111 (6th Cir. 1991); see also Watkins v. City of Southfield, 221 F.3d 883, 887 (6th Cir. July 21, 2000). The Supreme Court has clarified that a court's initial task in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697 (1999). The Sixth Circuit has described the procedure for determining qualified immunity as follows:

> The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether

---

[4]Whiting argues in his motion and brief that Philpott's Fourteenth Amendment claim must be dismissed because it is the Fourth Amendment that creates the right to be free from unreasonable seizures, including the right to be free from the use of excessive force. Unlike Whiting, the Court does not interpret Philpott's reference to the Fourteenth Amendment in her complaint as the invocation of a claim separate and apart from her Fourth Amendment claim. Rather, the Court understands Philpott's allegation simply as a reference to the well-established tenant that "[t]he Fourth Amendment [is] made applicable to the states through the Fourteenth Amendment." Myers v. Potter, 422 F.3d 347, 352 (6th Cir. 2005) (citing Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961)).

the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

To be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." Long v. Norris, 929 F.2d 1111, 1114 (6th Cir. 1991). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing" violates federal law. Anderson, 483 U.S. at 640, 107 S. Ct. at 3039. While replication of the official's specific conduct is not required to overcome qualified immunity, "'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'" Saylor v. Bd. of Educ., 118 F.3d 507, 515 (6th Cir. 1997) (quoting Lassiter v. Ala. A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994)(en banc)). In the Sixth Circuit, courts look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Sixth Circuit, and finally to decisions of other circuits. See Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000).

In Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001), the Court addressed the qualified immunity inquiry in the context of a Fourth Amendment claim. The Court stated that the initial inquiry must be as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. 201, 121 S. Ct. at 2156. If the answer to the first question is yes, the next question is whether that right was clearly established, an "inquiry . . . [that] must be undertaken in light of the specific context of the case, not

7

as a broad general proposition." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202, 121 S. Ct. at 2156-57.

Under Sixth Circuit precedent, "[t]he right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes." Meadows v. Thomas, 117 F. App'x 397, 404 (6th Cir. 2004) (quoting Kostrzewa v. City of Troy, 247 F.3d 633, 641 (6th Cir. 2001)). In Lyons v. City of Xenia, 417 F.3d 565 (6th Cir. 2005), the court explained the contours of a claim based upon the use of handcuffs that were too tight:

> The Fourth Amendment, it is true, prohibits unduly tight handcuffing in the course of an arrest. *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). And this general principle, it is also true, was "clearly established" under Sixth Circuit case law at the time of Lyons' arrest. *See Martin*, 106 F.3d at 1313.
> Not all allegations of tight handcuffing, however, amount to excessive force. In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing, *see Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001), and must show that officers ignored plaintiff's complaints that the handcuffs were too tight, *see Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002) (rejecting excessive-force claim as a matter of law where officers left defendant tightly handcuffed for three hours because defendant did not initially complain about the handcuffs, and when he did complain the officers responded promptly). *Cf. Martin*, 106 F.3d at 1313 (finding district court erred by granting qualified immunity because officers handcuffed the defendant so tightly that his hands became numb and swollen, then failed to respond to the defendant's complaints of pain until 35 minutes later).

Id. at 575-76. The court in Lyons held that the plaintiff failed to satisfy these requirements because she failed to allege either that the tight handcuffing caused some sort of physical injury or that she told the officers that the handcuffs were too tight. See id. In contrast, the court in Kostrzewa, supra, held that the plaintiff's allegations that officers handcuffed him too tightly were sufficient to state a claim. In particular, the plaintiff alleged that the officers ignored his complaints that the handcuffs

were too small and tight for his wrists; that the officers drove recklessly while the plaintiff was in the back seat of the patrol car in order to cause him further pain; that the officers decided to cuff him when they took him to the hospital for medical attention, even though his wrists were swollen, red, and painful; and that as a result of the handcuffing, he suffered severe and permanent injuries to both wrists.  See 247 F.3d at 640.

Whiting does not argue that Philpott has failed to allege that she complained about the handcuffs being too tight and that the officers ignored her complaints or that she has failed to allege that she has suffered any injury.  The allegations in Philpott's complaint, as well as her affidavit verifying the facts alleged therein as true, are sufficient to defeat both a motion under Rule 12(b)(6) for failure to state a claim and a motion for summary judgment under Rule 56.  Moreover, Whiting concedes, as he must, that even though he denies any involvement in handcuffing Philpott, he could be held liable if he were aware that the handcuffs were too tight and failed to act.  (Def.'s Br. at 7 (stating that "it is axiomatic that if [Whiting] did not know that the handcuffs were too tight then he cannot be liable").)  Indeed, it is well-established that "non-supervisory officers present during a violation of a person's civil rights who fail to stop the violation can be liable under § 1983." Sargent v. City of Toledo Police Dep't, 150 F. App'x 470, 474 (6th Cir. 2005) (citing Smith v. Heath, 691 F.2d 220, 224-25 (6th Cir. 1988)).

Whiting's sole argument for summary judgment is that he was not aware of Philpott's complaints that the handcuffs were too tight.  Although Whiting testified in his deposition that he did not recall hearing Philpott say anything about the handcuffs being too tight, Philpott has offered sufficient evidence to create an issue for the jury with regard to whether Whiting heard Philpott's complaints.  As noted above, Mark Philpott stated in his affidavit that while he was in the bedroom with police officers, he could hear Robin asking the officers to loosen the handcuffs because they

9

were too tight.  Because Whiting admits that he was one of the officers in the bedroom with Mark Philpott, a reasonable jury could conclude, based upon Mark Philpott's testimony, that Whiting also heard Robin's complaints.  Whiting contends that "[t]his is a tenuous assumption" because "Philpott may have been tuned in to what his wife was saying, while Trooper Whiting was concentrating on other matters."  (Def.'s Reply Br. at 1.)  He also asserts that "it seems curious that if Philpott was in the bedroom for twenty minutes with Trooper Whiting and heard [Robin] repeatedly complain about the handcuffs that he did not say something to the officers himself to try and help his wife."  (Id.)  While these arguments would be fine points to make during cross-examination or in a closing argument, they carry little weight with the Court at this juncture because they go simply to credibility – a matter beyond the Court's province in deciding a motion for summary judgment.  See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").  Because a disputed issue of fact remains with regard to whether Whiting heard Philpott's complaints, Whiting's motion must be denied.  Furthermore, pursuant to the cases set forth above, the Court concludes that the law regarding the right to be free from excessive force as a result of handcuffs being too tight, as well as the law regarding a non-supervisory officer's liability for failing to prevent the violation of a person's civil rights, was clearly established such that a reasonable officer in Whiting's position would have known that ignoring Philpott's complaints about the handcuffs being too tight would violate Philpott's Fourth Amendment rights.

**B.     Assault and Battery Claims**

Whiting contends that Philpott's assault and battery claims fail because there is no evidence that he even talked to or touched Philpott.  Philpott concedes as much at this point, and she notes that

10

she would be willing to dismiss this claim, but she requests the opportunity to depose the City of Portage officers in order to confirm that this is actually the case. Whiting contends that it is unnecessary for Philpott to depose the other officers because they responded to Whiting's request for admissions by admitting that Whiting did not place, or assist in placing, handcuffs on Philpott. (Answers to Def. Whiting's Req. for Admis. Directed to All Co-Defs. at 2.) Although it appears that there is no factual basis for assault and battery claims against Whiting, the Court finds that Whiting would not suffer any prejudice if Philpott is allowed to depose the City of Portage officers to confirm that Whiting played no role in the handcuffing. Because Philpott will likely depose the other Defendants and will obtain their versions of the facts regardless of whether these claims are dismissed, the Court will deny the motion on these claims without prejudice. If further discovery confirms that Whiting was not involved in the handcuffing, Philpott should voluntarily dismiss these claims on her own in order to save Whiting the trouble of having to file another motion.

## C.    Gross Negligence Claim

Whiting contends that Philpott may not maintain an action for gross negligence in this case for two reasons. First, Whiting argues that "Michigan courts do not allow a fourth amendment seizure case to be brought under the guise of a state law gross negligence claim." (Def.'s Br. Supp. at 11.) Second, he argues that even if a gross negligence claim is permitted under these circumstances, he is entitled to summary judgment because his conduct was not the proximate cause of Philpott's injuries.

The Court rejects Whiting's argument that Michigan law does not allow a gross negligence claim based upon allegations that handcuffs were too tight. In Oliver v. Smith, 269 Mich. App. 560, 715 N.W.2d 314 (2006), the issue before the court was "whether plaintiff was required to provide evidence that he suffered physical injury resulting from the tight handcuffs to establish that

11

defendant's conduct was grossly negligent and that defendant was therefore removed from the protection of the governmental immunity act." Id. at 565, 715 N.W.2d at 318. The court held that "a police officer's conduct of placing handcuffs too tightly does not constitute gross negligence unless physical injury results." Id. at 566, 715 N.W.2d at 318. Thus, contrary to Whiting's argument, Michigan courts recognize a claim for gross negligence based upon an officer's handcuffing an individual too tightly where there is evidence of a physical injury, as in this case.

The Court also rejects Whiting's argument that his conduct could not be the proximate cause of Philpott's injuries. In support of his argument, Whiting relies upon Robinson v. City of Detroit, 462 Mich. 439, 613 N.W.2d 307 (2000), in which the Michigan Supreme Court held that, under the governmental immunity statute, M.C.L.A. § 691.1407, the phrase "the proximate cause" in M.C.L.A. § 691.1407(2)(c) means that the governmental employee's gross negligence must be "the one most immediate, efficient, and direct cause of the injury or damage". Id. at 462, 613 N.W.2d at 319. Robinson involved two separate cases in which occupants of vehicles being pursued by police officers in high-speed chases were either injured or killed in resulting crashes. The Michigan Supreme Court concluded that in both cases, the officers' pursuit was not the proximate cause of the injuries sustained by the plaintiffs because "[t]he one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles." Id.

Whiting argues that his conduct cannot be the proximate cause of Philpott's injuries because he did not "handcuff [her], arrest [her], or otherwise interact with her." However, even if Whiting did not handcuff Philpott or interact with her, if he (or any of the other officers) heard her complaints and failed to act to determine whether the handcuffs were, in fact, too tight, his failure to act would have been "the one most immediate, efficient, and direct cause" of Philpott's injuries, id., because he could have prevented those injuries by adjusting or removing the handcuffs. Cf. Love v. City of

<u>Detroit</u>, No. 257375, 2006 WL 964721 (Mich. Ct. App. June 22, 2006) (publication page numbers unavailable) (concluding that the firefighters' actions were not the proximate cause of the decedents' deaths because "no evidence established that the firefighters could have reached the victims or that, if firefighters had acted more aggressively, the victims would have been rescued").  Therefore, the Court will deny the motion with regard to this claim.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court will deny Whiting's motion for summary judgment with regard to Philpott's Fourth Amendment and gross negligence claims.  The Court will deny Whiting's motion with regard to the assault and battery claims without prejudice.

An Order consistent with this Opinion will be entered.


Dated:  August 17, 2006                          _____/s/ Gordon J. Quist_____
                                                                    GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE